IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

JAN 2 0 2026

MITCHELL R. ELFERS
CLERK

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| vs. | Cr. No. 26-172 JB |
| JUSTIN HUNT, | |
| Defendant. | |

# PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(C), Fed. R. Crim. P., the parties notify the Court of the following agreement between the United States of America, by the United States Attorney for the District of New Mexico, and the Defendant, Justin Hunt, with the advice and counsel of his attorney, Ryan Villa. This agreement is limited to the United States Attorney's Office for the District of New Mexico and does not bind any other federal, state, or local agencies or prosecuting authorities.

## REPRESENTATION BY COUNSEL

1. The Defendant understands the Defendant's right to be represented by an attorney and is so represented. The Defendant has thoroughly reviewed all aspects of this case with the Defendant's attorney and is fully satisfied with that attorney's legal representation.

## RIGHTS OF THE DEFENDANT

2. The Defendant further understands the Defendant's rights:

    a.    to be prosecuted by indictment;

    b.    to plead not guilty, or having already so pleaded, to persist in that plea;

  c. to have a trial by jury; and

  d. at a trial:

    1) to confront and cross-examine adverse witnesses,

    2) to be protected from compelled self-incrimination,

    3) to testify and present evidence on the Defendant's own behalf, and

    4) to compel the attendance of witnesses for the defense.

## WAIVER OF RIGHTS AND PLEA OF GUILTY

3. The Defendant agrees to waive these rights and to plead guilty to a single count information, charging a violation of 18 U.S.C. § 1951(a), that being Conspiracy to Commit Interference with Commerce by Extortion Under Color of Official Right.

## SENTENCING

4. The Defendant understands that the maximum penalty provided by law for this offense is:

  a. imprisonment for a period of not more than 20 years;

  b. a fine not to exceed the greater of $250,000 or twice the pecuniary gain to the Defendant or pecuniary loss to the victim;

  c. a term of supervised release of not more than three years to follow any term of imprisonment. (If the Defendant serves a term of imprisonment, is then released on supervised release, and violates the conditions of supervised release, the Defendant's supervised release could be revoked — even on the last day of the term — and the Defendant could then be returned to another period of incarceration and a new term of supervised release.);

  d. a mandatory special penalty assessment of $100.00; and

   e. restitution as may be ordered by the Court.

5. The parties recognize that the federal sentencing guidelines are advisory and that the Court is required to consider them in determining the sentence it imposes.

6. The parties are aware that the Court will decide whether to accept or reject this plea agreement. The Court may defer its decision as to acceptance or rejection until there has been an opportunity to consider the presentence report. Pursuant to Federal Rule of Criminal Procedure 11(c)(5), if the Court rejects this plea agreement, the Defendant shall have the right to withdraw the Defendant's plea of guilty.

7. Regardless of any other provision in this agreement, the United States reserves the right to provide to the United States Pretrial Services and Probation Office and to the Court any information the United States believes may be helpful to the Court, including but not limited to information about the recommendations contained in this agreement and any relevant conduct under U.S.S.G. § 1B1.3.

## ELEMENTS OF THE OFFENSE

8. If this matter proceeded to trial, the Defendant understands that the United States would be required to prove, beyond a reasonable doubt, the following elements for violations of the charges listed below:

<u>Count 1: 18 U.S.C. § 1951(a), that being Conspiracy to Commit Interference with Commerce by Extortion Under Color of Official Right:</u>

*First*: The defendant agreed with at least one other person to commit interference with commerce by extortion under color of official right;

*Second*: The defendant knew the essential object of the conspiracy;

*Third*: The defendant knowingly and voluntarily participated in the conspiracy; and

3

*Fourth:*   There was interdependence among the members of the conspiracy; that is, the members, in some way or manner, intended to act together for their shared mutual benefit within the scope of the conspiracy charged.

## **DEFENDANT'S ADMISSION OF FACTS**

9.   By my signature on this plea agreement, I am acknowledging that I am pleading guilty because I am, in fact, guilty of the offense(s) to which I am pleading guilty. I recognize and accept responsibility for my criminal conduct. Moreover, in pleading guilty, I acknowledge that if I chose to go to trial instead of entering this plea, the United States could prove facts sufficient to establish my guilt of the offense(s) to which I am pleading guilty beyond a reasonable doubt, including any facts alleged in the information that increase the statutory minimum or maximum penalties. I specifically admit the following facts related to the charges against me, and declare under penalty of perjury that all of these facts are true and correct:

10.   I was a police service aid with the Albuquerque Police Department (APD) from 2000 to 2003. I became a sworn law enforcement officer with the Albuquerque Police Department (APD) in 2003. When I swore my oath as a law enforcement officer, I swore to enforce the laws of the State of New Mexico and to perform all duties to the best of my ability. Additionally, as an APD officer, I was required to adhere to the Personnel Code of Conduct, which required, among other things, to act in a manner that would not cast doubt of my integrity, honesty, moral judgment, or character.

11.   I joined the APD driving while intoxicated (DWI) unit in August 2011. As part of my experience working as an APD officer in the DWI unit, I am aware of and am familiar with the DWI laws and regulations in New Mexico. I understand that there are state criminal charges associated with DWI arrests, and that there are administrative proceedings handled through the

Motor Vehicle Department (MVD) related to the revocation of the persons' driver's licenses (the MVD proceedings). I transferred out of the DWI unit in August 2014, after which I held several positions at APD. I retired from APD with the rank of Lieutenant in February 2024.

12. I admit that since approximately 2012, contrary to my oath as an officer and APD's Code of Conduct, I conspired with THOMAS J. CLEAR, III, a criminal defense attorney who owned a law firm that specialized in DWI defense, RICARDO MENDEZ, who worked as an investigator for that law firm to engage in a scheme that targeted persons arrested for DWI (DWI Offenders). Under this scheme, I agreed to intentionally fail to appear at required criminal and administrative settings associated with the DWI-related arrests, allowing CLEAR to move to dismiss the proceedings in exchange for payment of cash and other gifts.

13. As part of the scheme, DWI Offenders, both aware and unaware of the bribery scheme, retained CLEAR as their attorney following their DWI arrests. CLEAR and/or MENDEZ consulted with the DWI Offender, and they strongly encouraged that the attorney retainer fee be paid in cash. Once the DWI Offender paid the cash retainer, I was paid to not perform my duties on the particular DWI Offender's case. I was paid in cash but I also received other benefits and things of value, including but not limited to, free legal services from Clear, and wheels, tires, and a lift kit for my Jeep. I received cash payments from MENDEZ.

14. For many of the cases on which I accepted payment in exchange for not performing my official duties, I conducted the DWI arrest in conformity with APD policies and procedures. The illegal conduct – that being me receiving benefits or payments from CLEAR and MENDEZ – would occur after I conducted the otherwise legitimate DWI arrest. That is, after I arrested the DWI Offender for DWI in the normal course of my duties, I would agree to accept payment to not appear as required. However, CLEAR, MENDEZ, and I also developed

another method of operating the scheme in which MENDEZ and others would orchestrate the traffic stop, thereby allowing me to conduct the DWI arrest, with the expectation that I would then be paid or receive a benefit to not appear as required. Under this scheme, MENDEZ and other co-conspirators would go out drinking with a particular target. Once that target had consumed alcohol and was heavily intoxicated, I would receive notification of where the target was driving. I would then conduct a traffic stop on the target's vehicle and arrest them for DWI (DWI Offender). As such, while the DWI Offender I arrested was intoxicated, the circumstances of their DWI arrest were orchestrated as part of the DWI scheme. I would then receive benefits or payments from CLEAR or MENDEZ to not appear on the criminal and MVD administrative proceedings for the DWI Offender, as discussed further below.

15.     I further admit that CLEAR also provided free or significantly discounted legal services to one of my family members to develop goodwill with me.

16.     Once the DWI Offender was arrested (either from an otherwise legitimate DWI arrest or as part of the orchestrated DWI arrests discussed above), I admit that we (the co-conspirators) developed a system to coordinate the scheduling of the MVD hearing and criminal settings, including Pretrial Interviews (PTIs), to ensure that I, as an Conspiring Officer, would be able to miss the required settings, which, in turn, allowed CLEAR to use my failure to appear as a basis to request dismissal of the proceeding even though CLEAR was aware that I had been paid or received benefits to not appear. Once the DWI Offender retained CLEAR, CLEAR, MENDEZ, and I would coordinate my non-appearance at required settings on the state criminal case and the MVD administrative proceeding.

17.     When I agreed to fail to appear as arranged, I admit that I knew that CLEAR would move to dismiss the criminal case and any MVD proceeding. Because I was a necessary

witness and because I agreed not to appear as required, I admit that CLEAR, MENDEZ, and I knew that the case and proceeding would likely be dismissed. I further admit that, because the state criminal charges were dismissed, the fines, fees, and interlock requirement that would otherwise have applied to the DWI conviction were not imposed. In addition, I admit that, because the DWI Offender's driver's license was not revoked, the DWI Offender was allowed to continue to drive without restriction.

18. For example, in May 2014, Mendez took one of CLEAR's clients, C.F., out drinking for C.F.'s birthday. MENDEZ, C.F., and others ended up at a strip club. MENDEZ purchased alcohol for C.F. Once C.F. was preparing to drive after consuming a large amount of alcohol, MENDEZ alerted me to when C.F. would be leaving the strip club, what vehicle C.F. would be driving, and where C.F.'s vehicle would be. After C.F. drove out of the strip club parking lot, I conducted a traffic stop on C.F.'s vehicle (with MENDEZ and others in the vehicle). I then conducted a DWI investigation and arrested C.F. for DWI. After C.F. was arrested and booked by criminal complaint, C.F. hired CLEAR. I received ~~U.S. currency~~ wheels, tires and lift kit from MENDEZ for my role in orchestrating C.F.'s arrest and for not appearing as otherwise required. In my police report, I purposefully omitted the information I received from MENDEZ prior to the stop and purposefully omitted that MENDEZ was in the vehicle with C.F. at the time of the stop. I then intentionally failed to appear at required criminal settings and the MVD hearing, guaranteeing dismissal of the criminal case and that C.F.'s revocation of C.F.'s driver's license would be rescinded.

19. I admit that, after leaving the DWI unit, I discussed non-public IA and APD information with MENDEZ. For example, when Conspiring Officer HONORIO ALBA received a Civilian Police Oversight Agency complaint related to ALBA's handling of a DWI Offender's

case in November 2023, I discussed this complaint with MENDEZ in an attempt to assist ALBA from having adverse action taken against him. I further admit that I referred DWI Offender M.H. to CLEAR and MENDEZ for representation.

20. I admit that in this conspiracy I acted in concert with other co-conspirators and intended to do so in order for the scheme to succeed and profit. MENDEZ and I relied on CLEAR to handle any aspect of the scheme that required an attorney presence in court or administrative settings. Without my agreement and participation, the high success rate of CLEAR in avoiding criminal and administrative consequences for DWI Offenders would not have been possible. I played an important role in the criminal scheme by accepting payment and items of value in exchange for acting, or failing to act, to ensure DWI Offenders who were represented by CLEAR did not face administrative or criminal consequences related to their DWI arrests. All members of the criminal scheme shared in the mutual benefits of the success of the schemes.

21. I further admit that I now know that the above-described criminal scheme affected interstate commerce. I admit that non-prosecuted DWI cases affect interstate commerce. I now understand that fines and fees collected by the courts are sent to the State Treasurer who directs the money to the correct State of New Mexico fund. The State of New Mexico uses its various funds to participate in interstate commerce and to purchase items from companies who engage in interstate commerce. Because the conspiracy allowed DWI Offenders to avoid convictions and the resulting fines and fees, the amount of money available to be transferred to the State of New Mexico's funds was decreased and the funds did not collect all the fines and fees to which it was entitled. Additionally, as a result of the efforts of the conspiracy, many DWI Offenders avoided administrative and criminal requirements to have interlock devices installed on their vehicles.

Interlock devices are manufactured by and purchased from companies involved in interstate commerce. Finally, I admit that, when drivers avoid criminal culpability for DWI, some may become more likely to drive while intoxicated in the future, and, the more often that a person drives while intoxicated, the more likely they are to have an accident. I admit that DWI-related accidents account that impact interstate commerce and the use of interstate highways.

22. I further admit that this conduct occurred in the District of New Mexico.

23. By signing this agreement, the Defendant admits that there is a factual basis for each element of the crime to which the Defendant is pleading guilty and agrees to affirm the facts set forth above during the plea colloquy. The Defendant agrees that the Court may rely on any of these facts, as well as facts in the presentence report, to determine the Defendant's sentence, including, but not limited to, the advisory guideline offense level.

## **RECOMMENDATIONS**

24. The United States and the Defendant recommend as follows:

> The Defendant and the United States have made an AGREEMENT pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), that a sentence of no greater than 57 months' incarceration is the appropriate disposition in this case. The parties agree that the Defendant is entitled to a reduction of up to three levels for acceptance of responsibility under U.S.S.G. § 3E1.1. The Defendant further recognizes that while the Defendant's attorney may have made a prediction or estimate of the guideline range, the Defendant understands that the Court is not bound by any such estimate or prediction.

        a.      The remaining components of the Defendant's sentence, including but not limited to any fine or restitution and the length and conditions of supervised release, shall be imposed by the Court after the presentation of evidence and/or argument by the parties.

        b.      If the Court accepts the plea agreement, it must inform the Defendant that the agreed upon disposition will be included in the judgment, and the Court is bound by the terms of the plea agreement once the Court accepts the plea agreement.

### DEFENDANT'S ADDITIONAL AGREEMENT

25.    The Defendant understands the Defendant's obligation to provide the United States Pretrial Services and Probation Office with truthful, accurate, and complete information. The Defendant represents that the Defendant has complied with and will continue to comply with this obligation.

26.    The Defendant agrees that any financial records and information provided by the Defendant to the Probation Office, before or after sentencing, may be disclosed to the United States Attorney's Office for use in the collection of any unpaid financial obligation.

27.    Except under circumstances where the Court, acting on its own, rejects this plea agreement (or functionally rejects it, as described below under the heading Violation or Rejection of Plea Agreement), the Defendant agrees that, upon the Defendant's signing of this plea agreement, the facts that the Defendant has admitted under this plea agreement as set forth above, as well as any facts to which the Defendant admits in open court at the Defendant's plea hearing, shall be admissible against the Defendant under Federal Rule of Evidence 801(d)(2)(A) in any subsequent proceeding, including a criminal trial, and the Defendant expressly waives the

Defendant's rights under Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410 with regard to the facts the Defendant admits in conjunction with this plea agreement. The Court has not acted on its own if its rejection of the plea agreement occurs after the Defendant has expressly or implicitly suggested to the Court a desire or willingness to withdraw his or her plea or not to be bound by the terms of this plea agreement.

28. By signing this plea agreement, the Defendant waives the right to withdraw the Defendant's plea of guilty pursuant to Federal Rule of Criminal Procedure 11(d) unless (1) the court rejects the plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(5) or (2) the Defendant can show a fair and just reason as those terms are used in Rule 11(d)(2)(B) for requesting the withdrawal.

29. The Defendant will not willfully fail to appear for any court appearance in this matter, nor willfully fail to surrender as ordered for service of any sentence.

30. The Defendant agrees not to engage in conduct that would constitute a new crime. Offenses that would be excluded for sentencing purposes under U.S.S.G. § 4A1.2(c) are not within the scope of this paragraph's agreement.

31. Defendant agrees not to engage in conduct that would constitute obstructing or impeding the administration of justice under U.S.S.G. § 3C1.1.

32. The Defendant recognizes that he is entering into a pre-indictment plea agreement and that, as part of his plea, he waives the right to any pre-indictment discovery, including those rights conferred by Federal Rule of Criminal Procedure 16(a). Pre-sentencing discovery will be provided by the United States Attorney's Office.

## RESTITUTION

33. The parties agree that, as part of the Defendant's sentence, the Court will enter an order of restitution pursuant to the Mandatory Victim's Restitution Act, 18 U.S.C. § 3663A if applicable; if § 3663A is not applicable, the Court will enter an order of restitution pursuant to 18 U.S.C. §§ 3663 and 3664.

34. No later than July 1 of each year after sentencing, until restitution is paid in full, the Defendant shall provide the Asset Recovery Unit, United States Attorney's Office, 201 Third Street NW, Suite 900, Albuquerque, New Mexico 87102, (1) a completed and signed financial statement provided to the Defendant by the United States Attorney's Office and/or the United States Probation Office and (2) a copy of the Defendant's most recent tax returns.

## WAIVER OF APPEAL RIGHTS AND POST-CONVICTION RIGHTS

35. The Defendant is aware that 28 U.S.C. § 1291 and 18 U.S.C. § 3742 afford the right to appeal a conviction and the sentence imposed. Acknowledging that, the Defendant knowingly waives the right to appeal the Defendant's conviction(s) and any sentence imposed in conformity with this Fed. R. Crim. P. 11(c)(1)(C) plea agreement, as well as any order of restitution entered by the Court. This waiver extends to any challenge to the manner in which the sentence was determined or imposed, including the district court's authority to make findings supporting the sentence.

36. The Defendant also waives the right to appeal any sentence imposed below or within the guideline range upon a revocation of supervised release in this cause number but may nonetheless appeal the determination of the revocation guideline range.

37. The Defendant also waives the right to appeal the denial of any motion filed under 18 U.S.C. § 3582(c) where such denial rests upon the court's determination that a sentence reduction is not warranted under the factors set forth in 18 U.S.C. § 3553(a).

38. In addition, the Defendant agrees to waive any collateral attack to the Defendant's conviction(s) and any sentence pursuant to 28 U.S.C. §§ 2241, 2255, or any other extraordinary writ, except on the issue of defense counsel's ineffective assistance.

39. The Defendant waives any challenge related to the initiation or conduct of his case by the United States Attorney's Office or Assistant United States Attorneys in the absence of a United States Attorney appointed by the President and confirmed by the Senate.

## GOVERNMENT'S ADDITIONAL AGREEMENT

40. Provided that the Defendant fulfills the Defendant's obligations as set out above, the United States agrees that the United States will not bring additional criminal charges against the Defendant arising out of the facts forming the basis of the present information.

## VOLUNTARY PLEA

41. The Defendant agrees and represents that this plea of guilty is freely and voluntarily made and is not the result of force, threats, or promises (other than the promises set forth in this agreement and any addenda). The Defendant also represents that the Defendant is pleading guilty because the Defendant is in fact guilty.

## VIOLATION OR REJECTION OF PLEA AGREEMENT

42. The Defendant agrees that if the Court finds by a preponderance of the evidence that the Defendant has violated any provision of this agreement, the United States will be released from its obligations under the agreement. In such a case, or where the Court has rejected the plea agreement or has functionally rejected it by failing to accept the agreement within six

months of its entry (except where the United States, in its sole discretion, agrees to an extension of that time) the United States is released from its obligations under the plea agreement and the Defendant will thereafter be subject to prosecution for any criminal violation, including but not limited to any crime(s) or offense(s) contained in or related to the charges in this case, as well as perjury, false statement, obstruction of justice, and any other crime committed by the Defendant during this prosecution.

43. The Defendant further agrees that in the event the Court finds that Defendant has breached this plea agreement, thus releasing the United States of its obligations under the agreement, such events do not constitute a fair and just reason under Rule 11(d)(2)(B) for withdrawing the guilty plea(s) entered pursuant to this agreement.

44. Following the Court's finding of a breach of this agreement by the Defendant, or rejection or functional rejection of the agreement by the Court, should the United States choose to pursue any charge that was either dismissed or not filed as a result of this agreement, the Defendant waives any defense to that charge or charges based on the lapse of time between the entry of this agreement and such event.

## SPECIAL ASSESSMENT

45. At the time of sentencing, the Defendant will tender to the United States District Court, District of New Mexico, 333 Lomas Blvd. NW, Suite 270, Albuquerque, New Mexico 87102, a money order or certified check payable to the order of the **United States District Court** in the amount of $100 in payment of the special penalty assessment described above.

**ENTIRETY OF AGREEMENT**

46. This document and any addenda are a complete statement of the agreement in this case and may not be altered unless done so in writing and signed by all parties. This agreement is effective upon signature by the Defendant and an Assistant United States Attorney.

AGREED TO AND SIGNED this 20th day of January, 2026.

TODD BLANCHE
Deputy Attorney General

RYAN ELLISON
First Assistant United States Attorney

~~SHANA B. LONG~~
KATHERINE L. LEWIS
Assistant United States Attorney
201 Third Street, Suite 900
Albuquerque, New Mexico  87103
(505) 346-7274

I have carefully discussed every part of this agreement with my client.  Further, I have fully advised my client of my client's rights, of possible defenses, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of the relevant sentencing guidelines provisions, and of the consequences of entering into this agreement. In addition, I have explained to my client the elements to each offense to which she/he is pleading guilty. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

Ryan Villa
Attorney for the Defendant

I have carefully discussed every part of this agreement with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. My attorney has advised me of my rights, of possible defenses, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of the relevant sentencing guidelines provisions, and of the consequences of entering into this agreement.

Justin Hunt
Defendant

15